UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

POLLYANNA McGREGOR,

                        Plaintiff,

    -against-                                        7:06-CV-352
                                                                      (LEK/DRH)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

## DECISION AND ORDER

### I. BACKGROUND

#### A. Procedural History

Plaintiff Pollyanna McGregor ("Plaintiff") filed an application for disability insurance benefits ("DIB") on May 17, 2004. Administrative Transcript ("AT") 40-41 (Dkt. No. 4). The application was denied initially and a request was made for a hearing. AT 24, 29. A hearing was held before an Administrative Law Judge ("ALJ") on August 22, 2005. AT 152-72. In a decision dated November 4, 2005, the ALJ found that Plaintiff was not disabled. AT 10-19. The Appeals Council denied Plaintiff's request for review on February 22, 2006. AT 3-5. Plaintiff commenced this action on March 20, 2006 pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner's final decision. Compl. (Dkt. No. 1).

#### B. Contentions

Plaintiff makes the following claims:

(1) The Commissioner failed to lend proper weight to the opinion of Plaintiff's treating physicians. Plntf's Brief (Dkt. No. 7) at 9-15.

(2) The Commissioner failed to determine properly Plaintiff's residual functional capacity ("RFC"). Plntf's Brief at 15-17.

(3) The Commissioner's conclusion that there is significant work in the national economy that Plaintiff could perform is not supported by substantial evidence. Plntf's Brief at 18-19.

(4) The ALJ failed to assess properly Plaintiff's credibility. Plntf's Brief at 20-21.

Defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed. Deft's Brief (Dkt. No. 9).

**C.     Facts**

Plaintiff, who was thirty-five years old at the time of the hearing, lives with her boyfriend and four children. AT 155. Plaintiff obtained her high school equivalency degree. Id. Plaintiff last worked as a pharmacy technician and stock personnel in a large retail store. AT 54.

Plaintiff alleges that while working on March 17, 2001, she fell off from a stool, injuring her lower back and neck. AT 54, 157. Plaintiff was apparently taken to the emergency room where she was given an injection of a pain reliever. AT 81, 84.

**1.     Treating Sources**

From April of 2001 to January of 2002, Plaintiff was treated by Bedros Bakirtzian, M.D., an orthopaedic surgeon. AT 74-77. Dr. Bakirtzian noted Plaintiff's persistent complaints of pain in her lower back and legs. Id. Dr. Bakirtzian prescribed various medications, physical therapy, aqua therapy, a lumbar brace, and a lumbar pillow. Id. He consistently noted that Plaintiff should "remain off work." Id.

X-rays of Plaintiff's lumbosacral spine taken on April 4, 2001 showed a "loss of the normal lumbar lordosis . . . but no signs of any spondylolisthesis or spondylolysis. AT 78. An MRI of Plaintiff's lumbar spine performed on May 30, 2001 was normal. AT 76. Nerve conduction studies performed on November 1, 2001 showed "significant electrophysiological evidence of mild demyelination of the superficial peroneal nerve affecting sensory conduction on the left." AT 73.

From January of 2002 to July of 2005, Plaintiff received chiropractic treatment from Robert Klein, D.C. and Daniel Chamberlain, D.C. AT 102-111, 113-36, 140-43, 151. On November 3, 2003, Dr. Klein opined that Plaintiff is partially permanently disabled as a result of her workplace accident. AT 91.

From December of 2004 to July of 2005, Plaintiff treated with Roger Sullivan, M.D. AT 149-50. Dr. Sullivan treated Plaintiff for depression, carpal tunnel syndrome, ear pain, and joint pain. Id. Her depression improved and her carpal tunnel syndrome "resolved." AT 149.

On July 14, 2005, Dr. Sullivan completed a Medical Source Statement form in which he opined that Plaintiff was able to lift and carry ten pounds, stand and walk less than two hours in an eight-hour workday, must periodically alternate sitting and standing to relieve pain or discomfort, and is limited in her abilities to push and pull using her upper extremities. AT 144-45. He also found that Plaintiff had occasional postural limitations, that Plaintiff can perform reaching only frequently, and that Plaintiff had some environmental limitations. AT 145-47.

    **2.**    **Examining Sources**

On June 12, 2001, Plaintiff was examined by Christopher Horn, M.D. for purposes of workers' compensation. AT 79-83. Dr. Horn concluded that Plaintiff could return to work "in a modified and graduated form . . . with light work, lifting 5 pounds occasionally and expected improvement to full activities within six weeks." AT 83. He found that Plaintiff's "current degree of disability is mild, temporary. Present disability is casually related to the injury of March 17, 2001." AT 80.

On December 3, 2001, Plaintiff was examined by George Mina, M.D. AT 84-86. Dr. Mina diagnosed Plaintiff as suffering from low back syndrome. AT 85. He concluded that maximum medical improvement has been achieved and that Plaintiff could return to work on "light duty" for

3

one to three months and should not lift over fifteen pounds.  Id.

On September 2, 2003, Plaintiff was examined by Lisa Francey, D.C.  AT 87-89.  Dr. Francey diagnosed Plaintiff as suffering from lumbago and myalgia.  AT 87.  Dr. Francey concluded that Plaintiff has not reached maximum medical improvement and needed twelve more weeks of chiropractic care and home exercises.  AT 83.  She found that Plaintiff was able to work on a part-time basis, avoiding "all repetitive bending or heavy lifting over 10 pounds."  Id.

On March 13, 2004, Plaintiff was examined by Abdul Latif, M.D., a neurologist.  AT 137-38.  He diagnosed her as suffering from chronic low back pain, left leg pain, and myofascial pain.  AT 138.  He recommended that she continue with chiropractic treatment, prescribed medication, and referred her to the "Pain Clinic."  Id.

On July 1, 2004, Plaintiff underwent an orthopedic examination at the request of the agency by Nader Wassef, M.D.  AT 92-94.  An x-ray of Plaintiff's cervical spine showed "[m]ild anterior osteophytic lipping at C5-6" while an x-ray of Plaintiff's lumbosacral spine was normal.  AT 95.  After examining Plaintiff, Dr. Wassef found no evidence of physical limitations and opined that her prognosis was good.  AT 94.

## II.  DISCUSSION

### A.    Disability Standard

To be considered disabled, a plaintiff seeking DIB or SSI benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education,

4

and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; . . . .  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step.  Berry, 675 F.2d at 467 (citations omitted).

In this case, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability.  AT 15.  At the second step, the ALJ determined that Plaintiff's cervical and lumbar spine disorders were severe impairments.  Id.  At the third step, the ALJ concluded that those impairments neither met nor equaled any impairment listed in Appendix 1 of the Regulations.  AT 17.  At the fourth step, the ALJ found that Plaintiff retained the RFC to perform a limited range of sedentary work.  AT 17-18.  The ALJ then found that Plaintiff was unable to perform any of her past relevant work.  AT 18.  At the fifth step, the ALJ concluded

that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AT 18-19. The ALJ therefore concluded that Plaintiff was not disabled. AT 20.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing, inter alia, Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. Johnson, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."

Williams, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212 (1983).

      C.     **RFC and Treating Physician Rule**

In rendering an RFC determination, the ALJ must consider, *inter alia*, objective medical facts, diagnoses, and medical opinions based on such facts. 20 C.F.R. §§ 404.1545, 416.945; see Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citation omitted). Evaluation of the medical opinion of a claimant's treating doctor is governed by the "treating physician rule." 20 C.F.R. § 404.1527(d)(2). As specified in the regulations, the opinion of the claimant's treating doctor is considered controlling as to the nature and severity of a claimant's impairment, provided it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . ." 20 C.F.R. § 404.1527(d)(2); see also Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998). A treating physician's opinion is binding unless contradicted by other medical evidence or by "overwhelmingly compelling" non-medical evidence. Brown v. Apfel, 991 F. Supp. 166, 171 (W.D.N.Y. 1998) (citation omitted).

When substantial evidence in the record conflicts with a treating physician's opinion, that opinion will not be given controlling weight. Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). However, under the applicable regulations, the Administration is required to explain the weight it gives to the opinions of a treating physician. See 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); see also Social Security Ruling ("SSR") 96-2P, 1996 WL 374188, at *5 (SSA July 2,

1996) (requiring that an ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight . . . [given] to the treating source's medical opinion and the reasons for that weight"). In determining the authoritative value of a non-controlling medical opinion, the ALJ must consider: (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) any other relevant factors. 20 C.F.R. § 404.1527(d); see also Schaal, 134 F.3d at 503. Omission of this analysis is considered failure to apply the proper legal standard, and is grounds for reversal of the Commissioner's determination. Schaal, 134 F.3d at 505.

In this case, the ALJ found that Plaintiff retains the RFC to perform a limited range of sedentary level work.[1] AT 17. Specifically, the ALJ found that Plaintiff has the following RFC:

> [C]laimant has the [RFC] to perform the exertional and non-exertional requirements of sedentary work involving lifting and carrying of up to 10 [pounds] occasionally and less than ten [pounds] frequently, requiring only occasional standing/walking, allowing the claimant to change positions during the work day, requiring only limited pushing and/or pulling, requiring only occasional climbing, balancing, kneeling, crouching, crawling, and stooping, requiring no more than frequent, but not constant, reaching in an 8-hour work day.

Id.

Plaintiff argues that the RFC determination is flawed in light of the opinions of her treating physicians, Dr. Bakirtzian and Dr. Sullivan. Dkt. No. 7 at 9-17. As previously noted, Dr. Bakirtzian consistently noted that Plaintiff should "remain off work." AT 74-77. In his decision,

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). Sedentary work generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citation omitted).

the ALJ failed to discuss Dr. Bakirtzian's opinion. Under the Regulations, an ALJ must give "good reasons" for the weight assigned to a treating source's medical opinion. 20 C.F.R. § 404.1527(d)(2); see also SSR 96-2P, 1996 WL 374188, at *5. Here, the ALJ erred by failing to address Dr. Bakirtzian's opinion.

Regarding Dr. Sullivan, he opined in a Medical Source Statement form that Plaintiff was able to perform work with some limitations. AT 144-47. In his decision, the ALJ stated that he "acknowledge[d]" Dr. Sullivan's opinion, but assigned it less than "full weight." AT 17. The ALJ explained that Plaintiff "does not walk with an assistive device, [and] performs a significant array of daily activities . . . that are inconsistent with less than occasional standing/walking, and [Plaintiff] has not complained of difficulty performing standing/walking activities at the level of severity suggested by Dr. Sullivan." Id. However, the ALJ failed to discuss the consistency of the opinion with the record as a whole, as required by 20 C.F.R. § 404.1527(d). The ALJ also failed to discuss the opinion in light of the other relevant factors set forth in those regulations, 20 C.F.R. § 404.1527(d).

In addition, the ALJ was obligated to state the weight given to the opinions of other sources in the record, since the ALJ did not give controlling weight to Dr. Sullivan's opinion. 20 C.F.R. § 404.1527(d), 416.927(d) ("Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."). Here, the ALJ did not give controlling weight to the opinion of a treating source, Dr. Sullivan. However, he failed to describe the weight given to the other sources' opinions.

The Court further notes that it is unclear on what specific evidence the ALJ relied in making the RFC determination. Pursuant to SSR 96-8p, the RFC assessment must include a narrative

9

discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  SSR 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996).  Here, the ALJ failed to provide a narrative discussion describing how the evidence supports each conclusion.

In light of the foregoing, the Court is unable to conclude that the RFC determination is supported by substantial evidence.  Therefore, the matter must be remanded for a proper evaluation of the opinion evidence and a proper evaluation of Plaintiff's RFC.

### D. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. See 20 C.F.R. §§ 404.1529, 416.929; see also Foster v. Callahan, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a).  Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. Id. §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity, persistence, or

limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. Id. §§ 404.1529(c)(3), 416.929(c)(3).

In his decision, the ALJ found that Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but found that Plaintiff's statements concerning the intensity, duration, and limiting effects are not entirely credible. AT 17. The ALJ then stated,

> The undersigned gives the claimant the benefit of the doubt and concludes that she is limited to sedentary work activities. However, the objective medical evidence is limited regarding evidence of any seriously limiting physical impairment that would prevent the claimant from sustaining full time, sedentary work. The claimant has confirmed the ability to clean, cook, do laundry, shop, and care for children on a daily basis. These activities require at least sedentary work, an ability to sustain a routine, and the ability to perform at least occasional standing/[walking] tasks.

AT 18. For the following reasons, the Court finds that the credibility determination is not supported by substantial evidence.

First, the ALJ's credibility determination is unclear. While the ALJ stated that he "gives the claimant the benefit of the doubt," he also stated that Plaintiff's "statements concerning the intensity, duration, and limiting effects are not entirely credible." AT 17. However, the ALJ failed to point out what specific statements he found not entirely credible. An ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the

11

adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (SSA July 2, 1996). In this case, the decision is not sufficiently specific to make clear the weight the ALJ gave to Plaintiff's statements and the reasons for that weight.

Second, while the ALJ briefly discussed Plaintiff's daily activities, the ALJ failed to discuss fully the remaining factors set forth in the regulations, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), as argued by Plaintiff. Dkt. No. 7 at 20. Moreover, the Second Circuit has frequently rejected determinations that a person is not disabled based on minimal activities of daily life not engaged in "for sustained periods comparable to those required to hold a sedentary job." Sarchese v. Barnhart, No. 01-CV-2172, 2002 WL 1732802, at *8 (E.D.N.Y. July 19, 2002) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643 (2d Cir. 1983) (other citation omitted)). The mere fact that an individual is mobile and able to engage in some light tasks at his home does not alone establish that he is able to engage in substantial gainful activity. Lecler v. Barnhart, No. 01 Civ. 8659, 2002 WL 31548600, at *7 (S.D.N.Y. Nov. 14, 2002) (quoting Gold v. Sec. of Health, Ed. & Welfare, 463 F.2d 38, 41 n.6 (2d Cir. 1972)). Here, Plaintiff stated that she prepares only dinner; goes grocery shopping but not alone; and has help performing housework. AT 159-60, 161, 165. Thus, the mere fact that Plaintiff engaged in minimal activities of daily living does not alone preclude a finding of disability.

In light of the foregoing, the Court finds that the ALJ's determination of Plaintiff's credibility is not supported by substantial evidence. Therefore, the matter must be remanded for a proper evaluation of Plaintiff's credibility.

### E.     Vocational Expert Testimony

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner at Step Five to prove that a job exists in

the national economy which the claimant is capable of performing.  See Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c).  Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions in the country.  20 C.F.R. §§ 404.1566(a), 416.966(a).  In making this determination, the ALJ may apply the grids or consult a vocational expert.  See Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2.  If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled.  Pratts v. Chater, 94 F.3d 34, 38-39 (2d Cir. 1996).  However, if a claimant suffers from non-exertional impairments that "significantly limit the range of work permitted by exertional limitations," the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform.  Id. at 39 (quoting Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986)); 20 C.F.R. §§ 404.1566(e), 416.966(e).  The vocational expert may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given his functional limitations.  See Colon v. Comm'r of Soc. Sec., No. 6:00-CV-0556, 2004 WL 1144059, at *6 (N.D.N.Y. Mar. 22, 2004) (Sharpe, J.).

In this case, the ALJ elicited the testimony of a vocational expert at the administrative hearing.  AT 167-72.  The ALJ asked the vocational expert to consider an individual of Plaintiff's age, education, and work experience, who was able to lift ten pounds frequently and possibly twenty pounds occasionally.  AT 168.  The vocational expert provided examples of several "light-type jobs."  Id.  The expert was then questioned by Plaintiff's counsel, who asked the vocational expert to consider the same individual, but who possessed the restrictions established by Dr. Sullivan in the functional assessment.  AT 169.  The expert testified that such restrictions would preclude the performance of light work, but would allow for performance of sedentary jobs, including finish

machining operator, inspector, and dispatcher.  AT 169.

In discussing this issue in his decision, the ALJ stated:

[The ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience and [RFC].  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of such occupations as a finishing machine worker . . . inspector . . . and dispatcher.

AT 18-19.

However, the ALJ's explanation is flawed.  First, the ALJ did not ask the vocational expert to consider an individual who possessed the claimant's RFC.  See AT 167-69.  Second, the vocational expert's testimony as to the existence of the jobs in question was based on the assumption that the hypothetical person possessed the restrictions that are set forth in the assessment completed by Dr. Sullivan.  AT 169.  As noted, the ALJ found that Dr. Sullivan's opinion was not entitled to "full weight" and found that Plaintiff retained an RFC that does not reflect all of the restrictions set forth in the assessment made by Dr. Sullivan.  AT 17.  Third, the vocational expert testified to the existence of the jobs at issue upon questioning by Plaintiff's counsel, and not upon questioning by the ALJ.  AT 169.

In light of the foregoing, the Court is unable to conclude that the ALJ's finding that work exists in significant numbers in the national economy is supported by substantial evidence.  The ALJ's explanation of this determination is flawed.  Moreover, the Court is remanding for a proper evaluation of Plaintiff's RFC.  Accordingly, the matter must be remanded for a proper evaluation of the Step Five finding.

### III. CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that the case be **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Decision and Order, and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:      January 29, 2008
            Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge